UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN FISCHLER, Individually and on behalf of all other persons similarly situated,<br><br>       Plaintiff,<br><br>   v.<br><br>PLANET SMOOTHIE FRANCHISES, L.L.C. AND KAHALA FRANCHISING, L.L.C.,<br><br>       Defendants. | ECF CASE<br><br>No.: _____<br><br><u>CLASS ACTION COMPLAINT</u><br><br><u>JURY TRIAL DEMANDED</u> |

<u>INTRODUCTION</u>

1.      Plaintiff Brian Fischler J. Fischler, who is legally blind, brings this civil rights action against Defendants Planet Smoothie Franchises L.L.C. and Kahala Franchising L.L.C. ("Defendants") for their failure to design, construct, maintain, and operate their website, www.planetsmoothie.com (the "Website"), to be fully accessible to and independently usable by Plaintiff Fischler and other blind or visually-impaired people.

2.      Plaintiff Fischler, individually and on behalf of others similarly situated, asserts claims under the Americans With Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL") against Defendants.

3.      Plaintiff Fischler seeks a permanent injunction to cause Defendants to change their corporate policies, practices, and procedures so that their Website will become and remain accessible to blind and visually-impaired consumers.

THE PARTIES

4.    Plaintiff Fischler is, at all relevant times, a resident of Astoria, New York, Queens County. As a blind, visually-impaired handicapped person, he is a member of a protected class of individuals under Title III of the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*, the NYSHRL and NYCHRL.

5.    Planet Smoothie is at all relevant times a Foreign Limited Liability Company that is organized under Georgia Law and registered to do business in the State of New York.

6.    Kahala Franchising is at all relevant times a Foreign Limited Liability Company that is organized under Delaware Law.

JURISDICTION AND VENUE

7.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff Fischler's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and 28 U.S.C. § 1332.

8.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff Fischler's NYSHRL, N.Y. Exec. Law Article 15, and NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*, claims.

9.    Venue is proper under §1391(b)(2) as a substantial part of the events giving rise to the claims occurred in this District: Plaintiff Fischler is a resident of this District; and he has attempted to access the Website in this District and, in doing so, was denied the full use and enjoyment of the facilities, goods, and services of the Website while in Kings County and these access barriers have denied him full and equal access to

the Website, which now deter him from visiting Defendants' smoothie stores, violating his rights under Title III of the ADA.

10.    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## NATURE OF ACTION

11.    Blind and visually-impaired people can access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually impaired person may independently access the Internet. Unless websites are designed to be read by screen-reading software, blind and visually impaired persons are unable to fully access websites, and the information, products, and services contained thereon.

12.    Blind and visually impaired users of computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech ("JAWS"), Talk Back and Voiceover are currently the most popular screen-reading programs.

13.    For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually impaired user is unable to access the same content available to sighted users.

14.     The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible.

15.     For a website to be equally accessible to a blind or visually impaired person, under these guidelines, it should have following:

a.      Alternative text ("alt-text") or text equivalent for every non-text element. Alt-text is an invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures, which includes captcha prompts. Alt-text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics, depriving that person from knowing what is on the website.

b.      Videos have audio description.

c.      Title frames with text are provided. Absent these titles, navigating a website is particularly difficult, as the screen reader reads out the frame filename, which is meaningless to the user.

d.      Webpage headings are properly labeled with the topic or purpose of the webpage, versus being blank. Screen readers read out page headings, allowing

users to quickly skip to a section. Navigation is, however, very difficult without those headings.

   e. Equivalent text is provided when using scripts.

   f. Forms may be completed with the same information and functionality as for sighted persons. Absent forms being properly labeled, it is difficult for a visually impaired or blind individual to complete the forms, as they do not know what the fields, how to input data, or what options to select (e.g., selecting a date or a size). A compliant website will, instead, provide labels or instructions when content requires user input. This includes captcha prompts, requiring the user to verity that he or she is not a robot.

   g. Information about the meaning and structure of content is conveyed by more than the visual presentation of content.

   h. Web pages do not share the same ID or title. When two or more elements on a web page share the same ID or title, it cause problems in screen readers which use IDs for labeling controls and table headings.

   i. Linked images must contain alt-text explaining the image. Absent that alt-text, a screen reader has no content to present the user as to what the image is.

   j. The purpose of each link is easily determined from how the link is labeled. Absent properly labeling each link or when no description exists, it confuses keyboard and screen-reader users as they do not know the purpose of the links. This includes captcha prompts.

k.      No redundant links where adjacent links go to the same URL address. When redundant links exist, it causes additional navigation and repetition for keyboard and screen-reader users.

l.      Portable Document Formats (PDFs) are accessible. When they are inaccessible, the visually impaired or blind individual cannot learn what information is on them.

m.      One or more keyboard operable user interface has a mode of operation where the keyboard focus indicator is discernible.

n.      Changing the setting of a user interface component does not automatically cause a change of content where the user has not been advised before using the component.

o.      The name and role of all user interface elements can be programmatically determined; items that can be set by the user can be programmatically set; and/or notification of changes to these items are available to user agents, including assistive technology.

<u>STATEMENT OF FACTS</u>

<u>Defendants, Their Website And Their Website's Barriers</u>

16.      Defendants own and operate smoothie stores throughout the United States, including locations at One Penn Plaza, New York, New York, and 523 Amsterdam, New York, New York.

17.      Defendants Website offers features to the public that should allow all consumers to access the facilities and services that it offers about their smoothie stores.

18.    Defendants' Website is heavily integrated with their smoothie stores, serving as a gateway to those locations. Through the Website, Defendants' customers are able to, *inter alia*: learn the smoothie stores' locations and hours of operation; learn about any "new and featured" smoothies (e.g. power kale kick); learn about the entire smoothie menu, including the nutritional and allergen information and the add-ins; purchase a gift card; and check their gift card balance.

19.    It is, upon information and belief, Defendants' policy and practice to deny Plaintiff Fischler and other blind or visually-impaired users access to their Website, thereby denying the facilities and services that are offered and integrated with their smoothie stores. Due to their failure and refusal to remove access barriers to their Website, Plaintiff Fischler and visually-impaired persons have been and are still being denied equal access to Defendants' smoothie stores and the numerous facilities, goods, services, and benefits offered to the public through their Website.

20.    Plaintiff Fischler cannot use a computer without the assistance of screen-reading software. He is, however, a proficient screen-reader user and uses it to access the Internet. He has visited the Website on separate occasions using screen-reading software.

21.    During his visits to the Website, the last occurring on or about March 2, 2018, Plaintiff Fischler encountered multiple access barriers that denied him full and equal access to the facilities and services offered to the public on the Website, as well as to the facilities, goods, and services of Defendants' smoothie stores. Because of these barriers he was unable to: navigate the Website substantially equal to sighted individuals, learn about the available smoothies, learn about the smoothies' nutritional information, and access any of the information on the drop down menus, which includes the locations.

22.    In additional to these overall issues, while navigating the Website, Plaintiff Fischler encountered multiple accessibility barriers that visually-impaired people often encounter with non-compliant websites:

a.    The Website does not contain alt-text or text equivalent for every non-text element: pictures of the smoothies, fruits and the mix-ins.

b.    Title frames with text are not provided.

c.    Two or more elements on webpages share the same ID including, for example, the webpages for addins and sources.

d.    Webpage headings are not properly labeled with the topic or purpose of the webpage, as they are either blank or otherwise not sufficiently labeled.

e.    Web pages share the same ID or title.

f.    Inaccessible PDFs exist. The nutritional information is contained on an inaccessible PDF.

Defendants Must Remove Barriers to Their Website

23.    Due to the inaccessibility of their Website, blind and visually-impaired customers such as Plaintiff Fischler, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services Defendants offer to the public on their Website. The Website's access barriers that Plaintiff Fischler encountered have caused a denial of his full and equal access in the past, and now deter him on a regular basis from accessing the Website. These access barriers have likewise deterred him from visiting Defendants' smoothie stores and enjoying them equal to sighted individuals.

24. If the Website was equally accessible to all, Plaintiff Fischler could independently navigate it, view goods and service items, locate Defendants' smoothie stores, learn about the various smoothies and their nutritional information.

25. Through his attempts to use the Website, Plaintiff Fischler has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

26. Because simple compliance with the WCAG 2.0 AA Guidelines would provide Plaintiff Fischler and other visually-impaired consumers with equal access to the Website, Plaintiff Fischler alleges that Defendants have engaged in acts of intentional discrimination, including, but not limited to, the following policies or practices:

a. Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff Fischler;

b. Failing to construct and maintain a website that is sufficiently intuitive to be equally accessible to visually-impaired individuals, including Plaintiff Fischler; and,

c. Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually impaired consumers, such as Plaintiff Fischler, as a member of a protected class.

27. Defendants therefore use standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

28. Title III of the ADA expressly contemplates the injunctive relief that Plaintiff Fischler seeks under 42 U.S.C. § 12188(a)(2).

29.    Because their Website has never been equally accessible, and because Defendants lack a corporate policy that is reasonably calculated to cause their Website to become and remain accessible, Plaintiff Fischler seeks a permanent injunction under 42 U.S.C. § 12188(a)(2) requiring Defendants to retain a qualified consultant acceptable to Plaintiff Fischler to assist Defendants to comply with WCAG 2.0 AA guidelines for their Website:

a.    Remediating the Website to be WCAG 2.0 AA compliant;

b.    Training Defendants' employees and agents who develop the Website on accessibility compliance under the WCAG 2.0 AA guidelines;

c.    Regularly checking the accessibility of the Website under the WCAG 2.0 AA guidelines;

d.    Regularly testing user accessibility by blind or vision-impaired persons to ensure that Defendants' Website complies under the WCAG 2.0 AA guidelines; and,

e.    Developing an accessibility policy that is clearly disclosed on Defendants' Website, with contact information for users to report accessibility-related problems.

30.    Although Defendants may currently have centralized policies on maintaining and operating their Website, Defendants lack a plan and policy reasonably calculated to make the Website fully and equally accessible to, and independently usable by, blind and other visually impaired individuals.

31.     Without injunctive relief, Plaintiff Fischler and other visually impaired consumers will continue to be unable to independently use the Website, violating their rights.

32.     Defendants have, upon information and belief, invested substantial sums in developing and maintaining their Website and have generated significant revenue directly from the Website and indirectly by encouraging customers to visit the brick and mortar smoothie stores. These amounts are far greater than the associated cost of making their Website equally accessible to visually impaired customers.

33.     Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

<u>CLASS ACTION ALLEGATIONS</u>

34.     Plaintiff Fischler seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendants' Website and as a result have been denied access to the equal enjoyment of goods and services offered in Defendants' smoothie stores, during the relevant statutory period ("Class Members").

35.     Plaintiff Fischler seeks to certify a State of New York subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the State of New York who have attempted to access the Website and as a result have been denied access to the equal enjoyment of goods and services offered in Defendants' State of New York smoothie stores, during the relevant statutory period ("New York Subclass Members").

36.     Plaintiff Fischler seeks to certify a New York City subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York who have

attempted to access the Website and as a result have been denied access to the equal enjoyment of goods and services offered in Defendants' New York City smoothie stores, during the relevant statutory period ("New York City Subclass Members").

37.     Common questions of law and fact exist amongst the Class Members, New York Subclass Members and New York City Subclass Members:

        a.     Whether Defendants' smoothie stores are places of "public accommodation";

        b.     Whether Defendants' Website is a "public accommodation" or a service or good "of a place of public accommodation" under Title III of the ADA;

        c.     Whether Defendants' Website is a "place or provider of public accommodation" or an "accommodation, advantage, facility or privilege" under the NYSHRL or NYCHRL;

        d.     Whether Defendants' Website denies the full and equal enjoyment of their goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating Title III of the ADA; and

        e.     Whether Defendants' Website denies the full and equal enjoyment of their goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYSHRL or NYCHRL.

38.     Plaintiff Fischler's claims are typical of the Class Members, New York Subclass Members and New York City Subclass Members: they are all severely visually impaired or otherwise blind, and claim that Defendants have violated Title III of the ADA, NYSHRL or NYCHRL by failing to update or remove access barriers on their Website so it can be independently accessible to the visually impaired individuals.

39.    Plaintiff Fischler will fairly and adequately represent and protect the Class and Subclasses' interests because he has retained and is represented by counsel competent and experienced in complex class action litigation, and because he has no interests antagonistic to the Class or Subclasses. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class and Subclasses, making appropriate both declaratory and injunctive relief with respect to Plaintiff, the Class and Subclasses.

40.    Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class and Subclass Members predominate over questions affecting only individuals, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

41.    Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

<u>FIRST CAUSE OF ACTION</u>
VIOLATIONS OF THE ADA, 42 U.S.C. § 12181 *et seq.*

42.    Plaintiff Fischler, individually and on behalf of the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

43.    Title III of the ADA prohibits "discriminat[ion] on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

44.    Defendants' smoothie stores are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Their Website is a service, privilege, or advantage of Defendants' smoothie stores. The Website is a service that is integrated with these locations.

45.    Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

46.    Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

47.    Under Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

48.    These acts violate Title III of the ADA, and the regulations promulgated thereunder. Plaintiff Fischler, who is a member of a protected class of persons under Title III of the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, he has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons.

49.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff Fischler requests the relief as set forth below.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL

50.    Plaintiff Fischler, individually and on behalf of the New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

51.    N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

52.    Defendants' State of New York smoothie stores constitute sales establishments and public accommodations within the definition of N.Y. Exec. Law § 292(9). Defendants' Website is a service, privilege or advantage of Defendants. Defendants' Website is a service that is by and integrated with these smoothie stores.

53.     Defendants are subject to NYSHRL because they own and operate their smoothie stores and the Website. Defendants are each a "person" within the meaning of N.Y. Exec. Law § 292(1).

54.     Defendants are violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to their Website, causing their Website and the services integrated with their smoothie stores to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendants make available to the non-disabled public.

55.     Under N.Y. Exec. Law § 296(2)(c)(i), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations being offered or would result in an undue burden."

56.     Under N.Y. Exec. Law § 296(2)(c)(ii), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

57.     Readily available, well-established guidelines exist on the Internet for making websites accessible to the blind and visually impaired. These guidelines have

been followed by other large business entities and government agencies in making their websites accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make their Website accessible would neither fundamentally alter the nature of their business nor result in an undue burden to them.

58.    Defendants' actions constitute willful intentional discrimination against the class because of a disability, violating the NYSHRL, N.Y. Exec. Law § 296(2), in that Defendants have:

        a.    Constructed and maintained a website that is inaccessible to Class Members with knowledge of the discrimination; and/or

        b.    Constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

        c.    Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

59.    Defendants discriminate, and will continue in the future to discriminate against Plaintiff Fischler and New York Subclass Members on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Defendants' Website and their smoothie stores under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff and the New York Subclass Members will continue to suffer irreparable harm.

60.    As Defendants' actions violate the NYSHRL, Plaintiff Fischler seeks injunctive relief to remedy the discrimination.

61.    Plaintiff Fischler is also entitled to compensatory damages, as well as civil penalties and fines under N.Y. Exec. Law § 297(4)(c) *et seq*. for every offense.

62.    Plaintiff Fischler is also entitled to reasonable attorneys' fees and costs.

63.    Under N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

THIRD CAUSE OF ACTION<br>VIOLATIONS OF THE NYCHRL

64.    Plaintiff Fischler, individually and on behalf the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

65.    The NYCHRL provides that "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof." N.Y.C. Admin. Code § 8-107(4)(a).

66.    Defendants' New York City locations are sales establishments and public accommodations within the meaning of the NYCHRL, N.Y.C. Admin. Code § 8-102(9), and their Website is a service that is integrated with their establishments.

67.    Defendants are subject to NYCHRL because they own and operate their smoothie stores in the City of New York and their Website, making it a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

68.    Defendants are violating the NYCHRL in refusing to update or remove access barriers to Website, causing their Website and the services integrated with their

smoothie stores to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendants make available to the non-disabled public.

69. Defendants are required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

70. Defendants' actions constitute willful intentional discrimination against the Subclass because of a disability, violating the NYCHRL, N.Y.C. Admin. Code § 8-107(4)(a) and § 8-107(15)(a,) in that they have:

     a. Constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

     b. Constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

     c. Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

71. As such, Defendants discriminate, and will continue in the future to discriminate against Plaintiff Fischler and the New York City Subclass Members because of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of their Website and their establishments under § 8-107(4)(a) and/or its implementing regulations. Unless the Court

enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff and the New York City Subclass will continue to suffer irreparable harm.

72.     As Defendants' actions violate the NYCHRL, Plaintiff Fischler seeks injunctive relief to remedy the discrimination.

73.     Plaintiff Fischler is also entitled to compensatory damages, as well as civil penalties and fines for each offense. N.Y.C. Admin. Code §§ 8-120(8), 8-126(a).

74.     Plaintiff Fischler is also entitled to reasonable attorneys' fees and costs.

75.     Under N.Y.C. Admin. Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FOURTH CAUSE OF ACTION
### DECLARATORY RELIEF

76.     Plaintiff Fischler, individually and on behalf the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

77.     An actual controversy has arisen and now exists between the parties in that Plaintiff Fischler contends, and is informed and believes that Defendants deny, that their Website contains access barriers denying blind customers the full and equal access to the goods, services and facilities of their Website and by extension their smoothie stores, which Defendants own, operate and control, failing to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

78.     A judicial declaration is necessary and appropriate now in order that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Fischler respectfully requests this Court grant the following relief:

a.    A preliminary and permanent injunction to prohibit Defendants from violating Title III of the ADA, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Admin. Code § 8-107, *et seq.*, and the laws of New York;

b.    A preliminary and permanent injunction requiring Defendants to take all the steps necessary to bring their Website into full compliance with the requirements set forth in Title III of the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.    A declaration that Defendants own, maintain and/or operate the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by ADA, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.*, N.Y.C. Admin. Code § 8-107, *et seq.*, and the laws of New York

d.    An order certifying the Class and Subclasses under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

e.    Compensatory damages in an amount to be determined by proof, including all applicable statutory damages, punitive damages and fines;

f.    Pre- and post-judgment interest;

g.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.    Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Fischler demands a trial by jury on all

questions of fact the Complaint raises.

Dated:  New York, New York
        March 8, 2018

                LIPSKY LOWE LLP


                s/ Douglas B. Lipsky
                Douglas B. Lipsky
                Christopher H. Lowe
                630 Third Avenue, Fifth Floor
                New York, New York 10017-6705
                Tel: 212.392.4772
                Fax: 212.444.1030
                doug@lipskylowe.com
                chris@lipskylowe.com